IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAWN T. WALKER, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PAMELA SELLERS *et al.*, | : | No. 21-660 |
| *Defendants* | : | |

**MEMORANDUM**

PRATTER, J.                                                                                                           MARCH 4, 2024

Shawn T. Walker, currently incarcerated at State Correctional Institution – Phoenix, has filed a lawsuit against a number of employees of the Pennsylvania Department of Corrections based on alleged retaliation he faced for exercising his First Amendment rights. That retaliation took the form of a transfer from the J Block to the F Block within the prison, placement in punitive segregation, and where various defendants filed an allegedly false misconduct report about Mr. Walker. Mr. Walker also alleges that these employees violated his due process rights under the Fourteenth Amendment when they issued an unmeritorious misconduct report. The defendants filed a motion to dismiss both claims.

Mr. Walker has sufficiently pled a retaliation claim based on the cell block transfer accompanied with his placement in punitive segregation and regarding the misconduct report with respect to Pamela Sellers and Mr. J. Peters, though not Ms. Clark. He has not sufficiently pled that his due process rights were violated when he was provided with a hearing regarding the misconduct report. Thus, the Court denies the motion to dismiss on the retaliation claims, except for those claims against Ms. Clark, and grants the motion on the due process claims.

1

**BACKGROUND**

In July 2018,[1] Shawn T. Walker was transferred from State Correctional Institute ("SCI") Graterford to SCI-Phoenix. He was assigned to live on the J Block in a single bunk cell where he was expected to serve out his life sentence. During the move from SCI-Graterford to SCI-Phoenix, some of Mr. Walker's property was damaged or missing. Mr. Walker signed a settlement agreement with the SCI-Phoenix administration to pay for part of his property. After he did not receive the money from this settlement, Mr. Walker approached Pamela Sellers, the Unit Manager of J Block where he was housed. Ms. Sellers allegedly refused to help Mr. Walker. Mr. Walker then sent a DC-135A Inmate's Request to Staff Member to then-Superintendent Tammy Ferguson about the settlement agreement. Mr. Walker alleges that Ms. Sellers then told him on October 31, 2018, that she "should stab [him] in [his] eye with [her] pen[,]" threatened to move Mr. Walker from J Block, and questioned why Mr. Walker told "those people [she] was no help to [him]."

Mr. Walker filed another DC-135A request to then-Superintendent Ferguson about Ms. Sellers' conduct. Ms. Sellers then allegedly moved Mr. Walker to a dirty cell on December 13, 2018. Mr. Walker believes that this was retaliation for the complaints he made about Ms. Sellers. Sometime after his December 17 interview with a lieutenant about this alleged retaliation, Mr. Walker returned to his regular housing unit. Mr. Walker also alleges that he was placed in one of four cells without electricity, though the date of that placement is unclear from the Complaint.

On March 12, 2019, another inmate asked Mr. Walker if he knew that he was on the move list. Mr. Walker was to be moved to F Block that evening. Mr. Walker then went to Ms. Sellers' office and asked her if she was moving him to F Block. Ms. Sellers told Mr. Walker that he was moving to F Block and that if he had a problem with it, he could file a lawsuit. Before Mr. Walker

---

[1] Mr. Walker avers that he was transferred in July 2020, but the defendants state that he must have been transferred in July 2018 because that is when SCI-Graterford closed.

could talk to then-Superintendent Ferguson to stop the move, Ms. Sellers called a security team to put Mr. Walker in punitive segregation.

Ms. Sellers then allegedly had Mr. J. Peters, the housing unit sergeant, file a falsified DC-141 Misconduct Report about Mr. Walker that charged him with having refused to obey an order that was never given to him. Derek White allegedly approved that report. On March 15, 2019, Ryan Szelewski led a hearing on the misconduct report. Mr. Szelewski allegedly denied Mr. Walker's request for assistance and request to call a witness. Mr. Szelewski then found Mr. Walker guilty of the charge within the report and gave him "15 days of hole time." Mr. Walker filed an administrative appeal of that finding pursuant to Department of Corrections procedure. Defendants Joseph Terra, Jeffrey Baker, and Dr. Brian Schneider, who constituted Mr. Walker's appeals panel for that misconduct charge, denied his appeal.

Mr. Walker previously filed a lawsuit against Ms. Sellers in 2013, with Gina Clark and Jeffrey Baker also named as defendants. Mr. Walker alleges that the cell transfer was retaliation for Mr. Walker's previous lawsuit against Ms. Sellers and his complaints about her. The defendants filed a motion to dismiss the complaint, arguing that Mr. Walker fails to state both retaliation and due process claims.

## LEGAL STANDARD

The Court grants a motion to dismiss where "it appears to a certainty that no relief could be granted under any set of facts which could be proved." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005) (quoting *D.P. Enter., Inc. v. Bucks Cnty. Cmty. Coll.*, 725 F.2d 943, 944 (3d Cir. 1984)). The Court takes all factual allegations in the complaint as true. *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

3

"To prevent dismissal, all civil complaints must . . . set out 'sufficient factual matter' to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 675-76).

At the same time, courts must construe a *pro se* complaint liberally. *Kovalev v. Lidl US, LLC*, 647 F. Supp. 3d 319, 335 (E.D. Pa. 2022) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In other words, a *pro se* litigant does not face the same stringent standards as those parties represented by counsel. *Id.* (citing *Estelle*, 429 U.S. at 106). A *pro se* litigant, though, must still allege sufficient facts to state a claim. *Id.* (citing *Rivera v. Monko*, 37 F.4th 909, 914 (3d Cir. 2022)).

## DISCUSSION

### I. Mr. Walker's Retaliation Claims[2]

For a plausible retaliation claim, a prisoner must plead "(1) constitutionally protected conduct, (2) an adverse action by prison officials 'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,' and (3) 'a causal link between the exercise of his constitutional rights and the adverse action taken against him.'" *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (internal quotation marks omitted) (quoting *Rauser v. Horn*, 241 F.3d 330, 333

---

[2] To the extent that Mr. Walker's retaliation claim rest on the allegations that Ms. Sellers threatened to stab him in the eye with her pen and moved him to a dirty cell in late 2018, retaliation stemming from those actions is barred by the statute of limitations. "It is uncontested that the statute of limitations applicable to § 1983 claims alleging First Amendment retaliation is two years." *Fabian v. Allegheny County*, No. 15-292, 2015 WL 7571936, at *2 (W.D. Pa. Nov. 24, 2015) (citing *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009)). Mr. Walker avers that the stabbing threat occurred on October 31, 2018, and the move to a dirty cell occurred on December 13, 2018. Compl. ¶¶ 27, 31, 47. Mr. Walker signed the Complaint on February 1, 2021, Compl. at 12, and it was filed on February 21, 2021. Doc. No. 2. Both of these dates are more than two years since the alleged retaliation for these events. Thus, the statute of limitations bars the retaliation claims to the extent they rely on these events.

Mr. Walker also alleges that he was placed in one of four cells without electricity, though it is unclear when that occurred. Compl. ¶ 53. Nevertheless, even assuming that the statute of limitations bars the retaliation claims to the extent they rely on the allegations pertaining to the cell without electricity, Mr. Walker's other allegations are sufficient to state a claim for relief.

(3d Cir. 2001)). The defendants concede the first prong where Mr. Walker filed complaints about Ms. Sellers to then-Superintendent Ferguson, though the defendants argue that there is no adverse action and that there is no causal link for certain defendants.

To plead an adverse action regarding his cell transfer, Mr. Walker must allege sufficient facts to show that the effect of his cell transfer was more than *de minimis*. *Martin v. Gearhart*, 712 F. App'x 179, 188 (3d Cir. 2017) (citing *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). On its own, a mere transfer from Mr. Walker's cell on the J Block to the F Block would not constitute an adverse action. *Cf. Verbanik v. Harlow*, 512 F. App'x 120, 122 (3d Cir. 2013) (affirming dismissal of retaliation claim where prisoner plaintiff alleged transfer to less desirous cell for filing grievance against defendant). Mr. Walker alleges, however, that he was also placed in punitive segregation. Compl. ¶ 63. There may be circumstances where "placement in administrative segregation" would constitute an adverse action, but that depends on the facts of the particular case. *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000).

In the instant case, Mr. Walker has pled that he was moved from J Block to F Block, which may or may not have been a materially worse placement. On its own, a movement from one cell to another where there is no pled material difference would not survive a motion to dismiss, *see Verbanik*, 512 F. App'x at 122; however, Mr. Walker pleads that Ms. Sellers called a security team before Mr. Walker could try preventing the move by talking with then-Superintendent Ferguson. Ms. Sellers then placed Mr. Walker in *punitive* segregation, not administrative segregation.

Furthermore, in his prayer for relief, Mr. Walker argues that part of the retaliation included the allegedly falsified misconduct report, and the defendants argue that Mr. Walker cannot show a causal link between the report and Ms. Sellers and Ms. Clark. According to the defendants, this is because Mr. Peters issued the misconduct report about Mr. Walker, without Ms. Sellers or Ms.

5

Clark's involvement. "However, [Mr. Walker] need only show knowledge of and acquiescence in the retaliatory act to demonstrate involvement." *Martin*, 712 F. App'x at 187 (citing *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). As for Ms. Sellers, Mr. Walker alleges that she supervised Mr. Peters and had him falsify the misconduct report, which would clearly show her knowledge and acquiescence of the alleged retaliation in the form of the falsified misconduct report. *See* Compl. ¶ 65. As for Ms. Clark, however, Mr. Walker has not alleged that she was involved in any way with the misconduct report. Thus, Mr. Walker has shown Ms. Sellers' and Mr. Peters' involvement with this alleged retaliation but not shown Ms. Clark's involvement.

The defendants also argue that there cannot be a retaliation claim because Mr. Walker has continued to file lawsuits since the alleged retaliation occurred, which the defendants argue demonstrates that the alleged retaliation has not deterred Mr. Walker. This argument is without merit because "[t]he test for adverse action, . . . is not whether *this* plaintiff would be deterred, but rather whether a prisoner of ordinary firmness would be deterred." *Martin*, 712 F. App'x at 188 (emphasis in original) (citing *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012)).

Taken as a whole, Mr. Walker's transfer to a new cell, placement in punitive segregation, and receipt of an allegedly falsified misconduct report, could "deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser*, 241 F.3d at 333 (alteration in original). The allegations Mr. Walker includes about Ms. Sellers and Mr. Peters show that *a prisoner* would be deterred from engaging in exercising his or her legal rights and a causal link where Mr. Peters acquiesced to writing the allegedly falsified misconduct report and Ms. Sellers moved Mr. Walker's cell, placed him in punitive segregation, and commanded Mr. Peters to write the allegedly falsified misconduct report. Thus, except for his retaliation claim against Ms. Sellers, Mr. Walker's retaliation claims survive the defendants' motion to dismiss.

6

## II. Mr. Walker's Due Process Claims

Mr. Walker alleges that various defendants violated his due process rights under the Fourteenth Amendment based on the allegedly falsified misconduct report, the allegation that Mr. Szelewski denied his request for assistance and a witness, and where the defendants handling Mr. Walker's appeal of the guilty determination denied that appeal. The defendants move to dismiss the due process claims, arguing that they did not violate Mr. Walker's due process rights because he was afforded a hearing, an opportunity to appeal, and "only sentenced to 15 days of disciplinary custody. . . ."

In *Sandin v. Conner*, DeMont Conner, an incarcerated individual, was subjected to a strip search and then responded with angry and foul language. 515 U.S. 472, 475 (1995). He was charged with disciplinary infractions, and the committee handling his infractions denied Mr. Conner's request to have multiple witnesses testify at his hearing. *Id.* The committee sentenced Mr. Conner to 30 days of disciplinary segregation. *Id.* at 475-76. Mr. Conner sought administrative review, and the deputy administrator found one of the misconduct charges against Mr. Conner to be unsupported. *Id.* Mr. Conner then brought a claim under Section 1983, arguing that his due process rights were violated. *Id.*

The Supreme Court held that even under these circumstances, the defendants did not violate Mr. Conner's due process rights, holding that the liberty interests protected by due process "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

Here, Mr. Walker's allegations do not plausibly demonstrate that he faced "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* The incidents that

7

Mr. Walker described are consistent with those that Mr. Conner experienced, though a deputy administrator found Mr. Conner's misconduct charge to be unsupported, and the appeals panel handling Mr. Walker's case did *not* overturn Mr. Szelewski's determination finding Mr. Walker guilty of the misconduct. Furthermore, the incidents Mr. Walker experienced are similar to those in other cases where courts within this Circuit have found the prisoner plaintiff did not face atypical and significant hardship. *See, e.g.*, *Brown v. Hannah*, 850 F. Supp. 2d 471, 478 (M.D. Pa. 2012) ("[Mr.] Brown's allegations that he was issued a falsified misconduct report, and that Hearing Examiner Mitchell denied a witness and the opportunity for [Mr.] Brown to cross examine his accuser at his hearing, did not violate his due process rights [because] sixty (60) days in disciplinary confinement does not constitute an 'atypical and significant hardship. . . .'"). Nor does Mr. Walker's 15-day confinement constitute significant hardship. *See Sack v. Canino*, No. 95-1412, 1995 WL 498709, at *1 (E.D. Pa. Aug. 21, 1995) ("[T]he Court finds that the penalty of thirty (30) days disciplinary confinement imposed by the prison authorities does not present" a liberty interest protected under the Due Process Clause.). Thus, although the misconduct report and punitive segregation may support a retaliation claim, the Court dismisses Mr. Walker's due process claims with prejudice.

## CONCLUSION

For the foregoing reasons, the Court denies the defendants' motion to dismiss on the retaliation claims, though grants the retaliation claim as to Ms. Clark, and grants the motion on the due process claims. An appropriate order follows.

BY THE COURT:

s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE