**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **SHAWN T. WALKER,**<br>**Plaintiff,**<br><br>**v.**<br><br>**PAMELA SELLERS AND SERGEANT JOHN PETERS III,**<br>**Defendants.** | **CIVIL ACTION**<br><br>**NO. 21-660** |

**HODGE, J.** **November 4, 2026**

## MEMORANDUM

Before the Court is Defendants Pamela Sellers ("Sellers") and Sergeant John Peters's ("Peters") (collectively, "Defendants")' Motion for Summary Judgment (ECF No. 73 ("Motion")), Plaintiff's opposition thereto (ECF No. 74), Defendants' Reply Brief In Support of Defendants' Motion for Summary Judgment (ECF No. 75), and Plaintiff's surreply in support of the opposition. (ECF No. 78.) For the reasons set forth below, Defendants' Motion is denied.[1]

First, before addressing the factual background in this matter, the Court notes this is a prisoner's civil rights case with a robust procedural history. *See infra* Section II. As part of the case's procedural history, on July 29, 2025, the Court denied Defendants' motion for summary judgment. (*See* ECF No. 55.) Defendants, after previously moving for summary judgment on the merits of Plaintiff's claims, filed the present Motion before the Court addressing only Plaintiff's

[1] The Court adopts the pagination supplied by the docketing CM/ECF system.

sought-after relief and monetary damages. (*See* ECF No. 73.) The Plaintiff's operative complaint (ECF No. 69-1 ("Operative Complaint")), in addition to seeking monetary damages, also requests injunctive relief—that Plaintiff's March 12, 2019, DC-141 Misconduct Report (No. B923101) ("Misconduct Report") (ECF No. 73-2 at 12), be expunged—as well as an award of costs and "such other relief as this Court may deem just [and] proper." (*Id.* ¶ G.) With this in mind, the Court turns to pertinent facts of Defendants' present Motion.

## I. FACTUAL BACKGROUND

On February 12, 2021, Plaintiff Shawn T. Walker filed his original complaint ("Original Complaint") against Pamela Sellers, Mr. J. Peters, Gina Clark, Derek White, Ryan Szelewski, Joseph Terra, Jeffrey Baker, Dr. Brian Schneider, Tammy Ferguson, and Zachary J. Moslak, alleging defendants violated his First Amendment and due process rights. (*See* ECF No. 2.)[2] Plaintiff is currently incarcerated at State Correctional Institution-Phoenix Maximum Security Prison ("SCI-Phoenix"), where he is serving a life sentence. (ECF No. 69-1 ¶ 16.) Prior to his current incarceration at SCI-Phoenix, Plaintiff was held at State Correctional Institution – Graterford ("SCI-Graterford"). (ECF No. 69-1 ¶ 16.) On July 15, 2018, Plaintiff was transferred from SCI-Graterford to SCI-Phoenix and assigned to live on "J-Unit Section A cell 1022 (a single bunk cell) where he expected to serve out his life sentence." (*Id.* ("J-Block").) Defendant Sellers served as the Unit Manager of J-Block at SCI-Phoenix. (*Id.* ¶ 17.)

During Plaintiff's transfer, some of his property was either damaged or missing. (*Id.* ¶ 21.) As a result, Plaintiff signed a settlement agreement[3] with the prison to receive compensation for

---

[2] For the reasons discussed *supra* in Section II, Sellers and Peters are the only remaining Defendants in this matter.

[3] The settlement agreement stems from a 2013 lawsuit involving Defendant Sellers (See ECF No. 69-1 ¶¶ 22, 23.) The record does not include a copy of the proposed settlement agreements, nor does it disclose why a new settlement agreement was offered. Plaintiff's pleadings provide no

lost and/or damaged property. (*Id.* ¶¶ 22, 23.) According to Plaintiff, he did not receive the settlement funds by the deadline allegedly provided for in the settlement agreement. (*Id.*) Before submitting a DC-135A[4] request addressing the missing settlement funds issue, Plaintiff asserts that he requested Defendant Sellers help him obtain the settlement funds. (ECF No. 73-2 at 2 ("First DC-135A Request").) Plaintiff asserts that Defendant Sellers refused to assist. (*Id.*) Accordingly, Plaintiff filed the First DC-135A Request on October 25, 2018, which states the following:

> Ms. Ferguson, on September 21, 2018, Unit Manager Pamela Sellers and I signed a settlement agreement. The money has not been put in my account, and someone wrote "refused" on the form. My Unit Manager has been no help and Joseph Selius the Business Manager suggested I bring this matter to your attention.

(*Id.*)

After Plaintiff's First DC-135A Request, Defendant Sellers asked Plaintiff to sign a new settlement agreement. (ECF No. 73-2 at 4 ("Second DC-135A Request").) According to Plaintiff, Defendant Sellers asked Plaintiff, "why did you tell those people I was no help to you?" (*Id.*) Defendant Sellers, according to Plaintiff, also approached Plaintiff seeking an apology. (*Id.*) After the interaction, on November 1, 2018, Plaintiff filed a Second DC-135A Request to then-Superintendent, Ms. Tammy Ferguson. (*Id.*)

On March 12, 2019, Plaintiff was informed by another inmate that he was scheduled to be transferred from J-Block to F-Block[5] that evening. (ECF No. 69-1, ¶ 60.) At approximately 3:00 p.m., on March 12, 2019, Plaintiff spoke with Defendant Sellers "to try to put a stop" to the transfer to F-Block and returned to his cell immediately thereafter. (ECF No. 74-3 at 134.) Defendant

---

further detail beyond his account of the interaction that occurred when the new settlement agreement was presented.

[4] A DC-135A is an internal Pennsylvania Department of Corrections ("PDOC") form titled "Inmate's Request to Staff Member," used by incarcerated individuals to communicate directly with prison staff. (ECF No. 74-3 at 5.)

[5] "F-Unit" and "F-Block" are used interchangeably throughout the factual record.

Sellers then told Defendant Peters that Plaintiff was refusing to move to F-block. (ECF No. 73-2 at 14.) As a result, according to Defendants, Defendant Peters went to Plaintiff's cell and directly ordered Plaintiff to move to F-block; Plaintiff testified that no such order was given to him by Defendants. (ECF No. 73-2 at 34.) A short time later, since Plaintiff "refused [his] order to be transferred to F-block" (ECF No. 73-2 at 14.), Defendant Peters, along with a security team, arrived at Plaintiff's cell between 3:00 p.m. and 4:00 p.m. to place him in punitive segregation.[6] Plaintiff asserts that, because he did not receive any such order to transfer cell blocks nor request to be placed in punitive segregation (ECF No. 73-2 at 33–37), there was no basis for Defendants to place him in punitive segregation. (*Id.*)

After Defendant Peters approached him in his cell, Plaintiff received the Misconduct Report. (ECF No. 73-2 at 12.) Later that day, Plaintiff filed a grievance (Grievance No. 791655, the "First Grievance Request") using Form DC-ADM 804. (ECF No. 73-2 at 16.) The First Grievance Request states, in pertinent part: "On 3-12-19 I was retaliated against by Unit Manager Pamela Sellers for complaints I made to the Superintendent … [b]ecause of those complaints Defendant Sellers attempted to kick me off of J-Block …." (*Id.*)

A few days later, on March 15, 2019, a hearing examiner[7] Ryan Szelewski led a hearing on the misconduct report and found Plaintiff guilty of disobeying an order to move cellblocks. (*Id.* at 18.) Plaintiff appealed the hearing examiner's decision the same day. (ECF No. 73-2 at 7.) After

---

6 "Punitive segregation" and "disciplinary custody" are used interchangeably in the factual record. Disciplinary custody is defined by PDOC as "the maximum restrictive status of confinement to which an inmate guilty of a Class I misconduct may be committed. An inmate may be placed in disciplinary custody status for a period no longer than 90 days per misconduct charge." (ECF No. 74-3 at 81.)

7 "Hearing examiner" is defined by PDOC as "[a]n employee of the Department's Office of Chief Counsel who conducts inmate Misconduct Hearings, Assessment Hearings, Agency Adjudication Hearings, and serves as an impartial party in the inmate disciplinary process." (ECF No. 74-3 at 49.)

the hearing, Plaintiff spent fifteen days in punitive segregation. (ECF No. 74-3 at 85.) While in punitive segregation, Plaintiff was "sleep deprived," "served smaller portions of food," and experienced "hunger pains." (*Id.*) Also during those fifteen days, Plaintiff "did not have access to the commissary," did not have a "change of clothes," and "could not take a shower," so, he "had to use the sink to clean [himself]." (*Id.*)

On March 22, 2019, again using Form DC-ADM 804, Plaintiff filed Grievance No. 793255 (the "Second Grievance Request"), which states in pertinent part: "I told Unit Manager Pamela Sellers I wasn't moving to F-Block, not Sgt. Peters ... I don't know why Ms. Sellers didn't write the misconduct [report], instead of having Sgt. Peters falsify a misconduct to make it appear he gave me an order to move and he didn't." (ECF 73-2 at 7.) On March 25, 2019, Plaintiff's misconduct appeal was denied by the Program Review Committee. (ECF No. 73-2 at 22.) The Program Review Committee's decision and rationale provided, in pertinent part:

> Inmate Walker claims that he was never told by Sgt. Peters to move to F Block. He indicated that he followed all orders given by Sgt. Peters including placing him on the property cart. He claims he did not tell any staff to take him to the RHU and that if he told Ms. Sellers he was not moving she should have been the one to issue the misconduct. He claims that video footage would support his claim. He further states his witness was not called to the hearing.

(ECF No. 73-2 at 22.)

Plaintiff appealed the decision, which was denied on April 2, 2019, by then-Superintendent Ferguson. (ECF No. 73-2 at 23–25.) Plaintiff appealed Ferguson's decision to the final level of administrative review, to the Chief Hearing Examiner,[8] Zachary J. Moslak. The final appeal was denied on April 25, 2019. (ECF No. 73-2 at 28.)

## II. PROCEDURAL HISTORY

---

[8] "Chief Hearing Examiner" is defined by the PDOC as "an employee of the Department's Office of Chief Counsel who conducts final reviews of inmate misconduct appeals." (ECF No. 74-3 at 81.)

On June 8, 2023, all the originally named Defendants filed a motion to dismiss the Original Compliant for failure to state a claim. (*See* ECF No. 33.) On March 5, 2024, the Court (J. Pratter) granted in part and denied in part the motion to dismiss, dismissing all defendants *except* Defendants Sellers and Peters. (*See* ECF Nos. 37, 38.) In its memorandum, the Court asserted, "[Plaintiff] sufficiently pled a retaliation claim based on the cell block transfer accompanied with his placement in punitive segregation and regarding the misconduct report with respect to Pamella Sellers and Mr. J Peters, though not Ms. Clark." (ECF Nos. 37 at 1.) Accordingly, Plaintiff's First Amendment retaliation claims are the only remaining claims against Defendants. (*Id.*)

On August 23, 2024, the case was reassigned to this Court from the calendar of the late Honorable Gene E.K. Pratter. On November 14, 2024, Defendants filed a motion for summary judgment on two grounds: (1) Plaintiff failed to exhaust administrative remedies regarding the Plaintiff's retaliation claims because he failed to request money damages in his grievances; and (2) Plaintiff's retaliation claims fail as a matter of law. (*See* ECF No. 48.) On July 29, 2025, the Court denied the motion for summary judgment. (*See* ECF No. 54.) On July 31, 2025, Defendants filed a Motion for Judgment on the Pleadings arguing Plaintiff's request for declaratory relief was improper. (*See* ECF No. 56.) On August 26, 2025, Plaintiff was appointed counsel. (*See* ECF No. 60.)

On September 15, 2025, Plaintiff's counsel discovered that the Original Complaint was incomplete, specifically that the final pages of the Original Complaint were not docketed. (*See* ECF No. 69.) On October 13, 2025, Plaintiff's counsel filed a complete copy of Plaintiff's Operative Complaint. Thereafter, the Court issued an order declaring: (1) the newly filed complete complaint is the Operative Complaint; and (2) the motion for judgment on the pleadings is moot, and any further motions must be filed no later than November 5, 2025. (ECF

No. 71.) Now, Defendants move the Court to enter judgment in their favor pursuant to Federal Rule of Civil Procedure 56.

## III. LEGAL STANDARD

A motion for summary judgment must be denied unless the moving party is able to show "no genuine dispute as to any material fact" and that the "movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility" of identifying the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute is defined as one in which a jury could reasonably find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc*., 447 U.S. 242, 248 (1986). In assessing materiality, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

When the defendant moves for summary judgment, "the initial burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case." *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005). The summary judgment standard requires the court to view the evidence in the light most favorable to the non-moving party, including all justifiable inferences. *Anderson,* 447 U.S. at 255. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 248. If the court finds that any factual issues exist that could be reasonably resolved for either party, and thus requires the presence of a fact finder, then summary judgment must be denied. *Id.* at 250.

## IV. DISCUSSION

Defendants make two arguments in their Motion and an additional argument in their reply.[9] First, they assert that Plaintiff failed to exhaust his administrative remedies, thus, Plaintiff is barred from seeking any monetary damages. (ECF No. 73 at 5–6.) Second, they contend that Plaintiff is barred from seeking declaratory relief because Plaintiff is seeking to adjudicate past conduct. (*Id.*) Third, and raised for first time in their reply, Defendants assert that Plaintiff's request for injunctive relief should be dismissed because it was not requested as to Defendants Sellers and Peters. (ECF No. 73.) The Court addresses and rejects each argument in turn.

**A. Plaintiff Exhausted His Remedies Under DC-ADM 801 and DC-ADM 804.**

Defendants focus their argument on exhaustion pursuant to DC-ADM 804. (*Id.*) They argue in Plaintiff's First Grievance Request – completed on a DC-ADM 804 form – the only relief sought was a "complete and thorough investigation of [Defendant] Sellers conduct towards me." (*Id.*) Furthermore, the Defendants posit that in Plaintiff's Second Grievance Request, also completed on a DC-ADM 804 form, "Plaintiff failed to demand monetary compensation in either of the two grievances he filed regarding the incident … now he is barred from seeking monetary damages in this lawsuit." (*Id.*) However, DC-ADM 804 states, in pertinent part:

> "[i]ssues concerning a specific inmate misconduct charge, ***conduct of hearing, statements written within a misconduct and/or other report***, a specific disciplinary sanction, and/or the reasons for placement in administrative custody will not be addressed through the Inmate Grievance System and must be addressed through Department policy **DC-ADM 801, 'Inmate Discipline' and/or DC-ADM 802, 'Administrative Custody Procedures.'"**

(ECF No. 74-3 at 6.) The Court construes the plain language of DC-ADM 804 as showing DC-ADM 801 is the appropriate mechanism through which prisoners can exhaust claims concerning

---

[9] It is within the Court's discretion to address or ignore arguments raised for the first time in a reply brief. *See Gucciardi v. Bonide Prods., Inc.*, 28 F. Supp.3d 383, 393 (E.D. Pa. 2014) ("Where a reply brief raises new arguments in support of a motion for summary judgment, the district court is justified in disregarding them."). In this instance, the Court chooses to address the injunctive relief argument raised in the reply *infra* Section II.A.2.

misconduct charges. Courts in this Circuit agree that incarcerated individuals must utilize DC-ADM 801 to exhaust claims concerning misconduct charges. *See Hinton v. Mark*, No. 10-CV-305, 2017 WL 4342204, at *9 (W.D. Pa. Sept. 29, 2017); *cf. Howard v. Chatcavage*, 570 F. App'x 117, 119 (3d Cir. 2014) ("[T]he inmate grievance process and the inmate discipline process are two separate tracks, the mixing of which is specifically forbidden."). The Plaintiff did so in this matter.

Plaintiff testified in his deposition that he was retaliated against for suing Defendant Sellers in 2013 and continuing to file complaints against her—complaints that, according to Plaintiff's testimony, include harassment and a threat to "stab [Plaintiff] in the eye with a pen."[10] (ECF No. 73-2 at 35.) In Plaintiff's misconduct hearing appeal, Plaintiff stated Defendant Sellers ordered Defendant Peters to falsify a misconduct report against him. (ECF No. 74-3.) Plaintiff stated in his declaration: "[o]n March 12, 2019, John Peters falsified a DC-141 Misconduct report against me, charging me with refusing to obey an order." (ECF No. 74-3.) Plaintiff further declared "[t]he false misconduct report was retaliation against me because I filed a 2013 lawsuit and DC-135A complaints against Pamela Sellers. Because of the false misconduct report, I was placed in punitive segregation for 15 days." (*Id.*) Thus, the claims in the Complaint against Defendants, "*concerns* the misconduct charge." (ECF No. 74-3 at 6.) (emphasis added).

Because the claim "*concerns* the misconduct charge" (*id.*), the Court must determine whether DC-ADM 801 was properly utilized by Plaintiff. In this instance, it is undisputed that Plaintiff properly appealed his misconduct report through DC-ADM 801 to the highest possible reviewer, and, notably, DC-ADM 801 does *not* impose the additional requirement that incarcerated

---

[10] Although this interaction occurred outside of the applicable limitations period, it may still be considered as background evidence to support Plaintiff's claim of retaliation asserted in his Complaint by establishing a pattern of antagonism. *See Witbeck v. Equip. Trans., LLC,* 2022 WL 625719, at *5 (M.D. Pa. Mar. 3, 2022) (finding that "past discriminatory conduct at the plaintiff outside of the statutory period can constitute background circumstantial evidence.").

individuals must request monetary damages in their grievance request to exhaust all administrative remedies. (*See* ECF No. 74-3 at 38–80.) Thus, the Court finds that a genuine dispute of material fact exists as to whether Plaintiff is barred from seeking monetary damages given that he exhausted his administrative remedies under DC-ADM 801 and DC-ADM 804.

**B. Authority to Award Appropriate Relief**

As discussed *supra*, the Complaint requests compensatory, punitive, and nominal damages, in addition to declaratory and injunctive relief, which Defendants assert in their Motion is improper. The Complaint, also requests as a catchall, "such other relief as this Court may deem just [and] proper." (*Id.*) Notably, allegations contained in *pro se* complaints, similar to the one before the Court, are held to "less stringent standards than formal pleadings drafted by lawyers." *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam) (holding *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers); *see also Hurd v. Romeo*, 752 F.2d 68 (3d Cir. 1985). Additionally, so long as the relief complies with Federal Rule of Civil Procedure 54(c), the Court may shape relief how it sees fit. Fed. R. Civ. P. 54(c) ("[F]inal judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."); *see USX Corp. v. Barnhart*, 395 F.3d 161, 165 (3d Cir. 2004) ("As long as the plaintiffs have stated a claim for relief, it is the court's obligation to grant the relief to which the prevailing party is entitled whether it has been specifically demanded or not."); *Allegheny Health Educ. & Rsch. Found.*, 383 F.3d 169, 174 (3d Cir. 2004) ("There is a general prayer for relief which could be broad enough to include relief from the award of prospective relief.").

Accordingly, if a *pro se* plaintiff fails to allege specific relief in their complaint, the *pro se* plaintiff is not automatically precluded from that relief. Indeed, the Court avers the inquiry should be construed more broadly and encompass whether the complaint would permit a *pro se* plaintiff

to prove a set of facts which would entitle them to legal or equitable relief under federal law. *Hurd*, 752 F.2d at 71.

**1. Nominal, Punitive, and Compensatory Damages**

In this case, even though Plaintiff requests nominal damages in his Complaint (*See* ECF No. 69 at 12), Plaintiff is not required to allege nominal damages because, construing Plaintiff's *pro se* Operative Complaint liberally, the Court interprets his Operative Complaint to request nominal damages. *See Haines,* 404 U.S. at 520; *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) ("it is not necessary to allege nominal damages."); *see also Basista v. Weir*, 340 F.2d 74, 87 (3d. Cir. 1965); *see also Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir. 2000).

With respect to compensatory damages, Plaintiff's claim for compensatory damages is properly available because the Plaintiff's claim for monetary damages is properly available. *See supra* Section IV.A. Additionally, upon Plaintiff making a proper showing thereof, "[p]unitive damages may also be awarded based solely on a constitutional violation". *Allah*, 226 F.3d 247 at 251. Furthermore, to the "extent that [Plaintiff's] damages claims stem solely from the violation of his First Amendment rights . . . those [punitive damages] claims are not barred." *Id*. Therefore, the Court finds that nominal, punitive, and compensatory damages are properly available to Plaintiff and denies the Motion on those grounds.

**2. Declaratory Judgment and Injunctive Relief**

The Declaratory Judgment Act and Federal Rule of Civil Procedure 57 provide the standards for declaratory relief. Under the Declaratory Judgment Act ("DJA"), courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). In interpreting this relief, Rule 57 submits that "[t]he existence of another adequate remedy does not preclude a judgment for

declaratory relief ...." Fed. R. Civ. P. 57. Indeed, declaratory judgments are unavailable to litigants who seek a proclamation that their rights were violated in the past *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").

Plaintiff seeks a declaratory judgment that recognizes Defendants' alleged violation of his rights under the First Amendment. (*See generally* ECF No. 69-1.) Defendants assert in their Motion that a declaratory judgment is improper because, as defined above, declaratory relief is "prospective in nature," *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 628 (3d Cir. 2013), and cannot be applied as "retroactive relief." *Bond v. DiClaudio*, No. 22-3010, 2023 WL 1990532, at *1 (3d Cir. Feb 14, 2023) (unpublished); *see also Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (per curiam) ("Declaratory judgment is inappropriate solely to adjudicate past conduct" and is also not "meant simply to proclaim that one party is liable to another ...."); *see, e.g., Ke v. DiPasquale*, 828 F. App'x 98, 101 (3d Cir. 2020). Defendants assert declaratory relief requires some form of future harm, and since no future harm exists for Plaintiff, declaratory relief is unavailable. The Court is not persuaded.

District courts within this Circuit have recognized that misconduct reports, like the one filed against Plaintiff in this matter, can constitute an ongoing, future injury based on the threat of future harm. *See Bauer v. Sielaff,* 372 F. Supp. 1104, 1106, 1116 (E.D. Pa. 1974) (holding that the misconduct report at issue "represent[ed] a continuing potential injury" because the report "may

adversely affect the plaintiff's chances for parole."). The facts presented to the Court in *Bauer* are similar to the facts in the matter now before the Court, and thus persuasive.

*Bauer* was a civil rights action brought by a prisoner-plaintiff in the Eastern District of Pennsylvania. *Id.* at 1106. As in *Bauer*, Plaintiff is a prisoner-plaintiff bringing a civil rights action in the Eastern District of Pennsylvania. In *Bauer*, the prisoner-plaintiff also sought damages and injunctive relief "as the result of several incidents which occurred when plaintiff was confined at the SCI-Pittsburgh, and at [ ] SCI-Graterford." *Id.* Plaintiff here was also a prisoner at SCI-Graterford. The prisoner-plaintiff in *Bauer*, as here, was also claiming a "misconduct report was improperly placed on his record." *Id*. With respect to the misconduct report in *Bauer*, the court ultimately held that the "prison records should be corrected by deleting any reference to the alleged misconduct" to prevent continuing injury. Thus, as in *Bauer*, declaratory relief is properly available to Plaintiff.

The Plaintiff also requests injunctive relief so that the allegedly false misconduct report can be expunged from his record. (*See generally* ECF No. 69-1.) Defendants assert in their reply that injunctive relief is not proper against them, specifically, because injunctive relief was only sought against now-dismissed Defendant Moslak. (ECF No. 75.) As discussed *supra* in Section II.B, longstanding precedent and Federal Rule of Civil Procedure 54, coupled with the fact this Complaint was drafted by a *pro se* Plaintiff, enables the Court to award such relief with noted consideration given to the liberal standard that the Court affords pro se litigants. Further, the catchall request for relief in the Complaint, seeking "such other relief as this Court may deem just [and] proper" (ECF No. 69-1 ¶ G), enables the Court to award such relief irrespective of Plaintiff's specific request in his Complaint. Thus, in addition to declaratory relief, injunctive relief is also properly available to Plaintiff.

## V. CONCLUSION

For the foregoing reasons, the Motion is denied. An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**